UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT GIFFORD, | ) | CASE NO. 5:20-cv-559 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the report and recommendation of Magistrate Judge Thomas Parker ("R&R") regarding plaintiff Scott Gifford's ("Gifford") complaint for judicial review of the defendant Commissioner of Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Doc. No. 18.) The magistrate judge recommended that the Commissioner's decision be affirmed. (*Id*. at 1.[1]) Plaintiff filed an objection to the R&R (Doc. No. 19) and the Commissioner filed a response. (Doc. No. 20).

For the reasons set forth below, the Court remands this case for further proceedings pursuant to Sentence Six of 42 U.S.C. § 405(g).

---

[1] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

# I. BACKGROUND

## A. Factual

Gifford does not object to the procedural and basic factual history set forth in the R&R and, therefore, that portion of the R&R is summarized here. Gifford applied for SSI on February 16, 2017, alleging that he became disabled on April 1, 2016, as a result of an ATV rollover accident. (Doc. No. 18 at 1–2.) Gifford's injuries were extensive, including multiple fractures, contusions, and damage to his spine, which included a compression fracture at the L1 level with small left iliopsoas hematoma at the L1, L2, and L3 left transverse process fracture, and a left-sided transverse process fracture of T10-T11. Gifford also sustained bilateral rib fractures. Plaintiff had spinal fusion surgery at T12-L2. He was discharged from the hospital on April 12, 2016 and transferred to a nursing home where he received physical and occupational therapy until he was released on April 21, 2016. (*Id.* at 2.)

Thereafter, Gifford treated with Dr. James Kennedy at the Crystal Clinic from June 24, 2016 to January 3, 2017 for pain in his right shoulder and continuing back problems. During that period, x-rays showed that Gifford's spinal fusion was "healing well with good bone formation" and, while he had some limitation in range of motion and pain with extension of his lumbar spine, he was ambulating without difficulty, had proper balance and posture, and was not using an assistive device. Gifford's muscle strength and tone in his lower extremities was rated 5/5, and he was advised to continue a home exercise program and increase activity as tolerated. (*Id.* at 2–3.) Gifford also underwent a surgical repair of his right rotator cuff, which he reported increased his motion and decreased his pain. When he saw Dr. Kennedy for a follow-up appointment on November 21, 2016, his shoulder was "coming along well" and he was advised to continue a home exercise program and increase activity as tolerated. (*Id.* at 3.) Gifford also treated at

Comprehensive Pain Management for low back pain and collapsed vertebra from June 4, 2016 through November 9, 2016, when he was discharged after testing positive for cocaine. (*Id.*) Gifford was told by health care providers at the Crystal Clinic in January 2017 that he would likely continue to suffer from chronic pain. (Doc. No. 13 (Transcript) at 712.) Gifford attended a psychiatric assessment for chronic pain in October 2017. (*See id*. at 51, 486.)

On June 9, 2017, Gifford followed up with Dr. Ghanem for his right rotator cuff repair. Gifford reported that his shoulder function was limited, and he was experiencing chronic debilitating pain which required him "to constantly stand." With respect to his back, Gifford had normal rotation but limited flexion and extension in his back and an abnormal gait. Dr. Ghanem advised Gifford to take certain pain medication and noted that he would most likely to be unable to work in the next few months "due to the physical limitation of his back." (Doc. No. 18 at 4.)

Gifford saw Dr. Sellechio, M.D. on August 13, 2018 for an annual physical examination. Gifford reported that medication helped him sleep and he occasionally engaged in binge drinking when he overworked in the yard. Examination showed normal range of motion in Gifford's spine but tenderness in the lower back and paraspinal muscles. Dr. Sellechio diagnosed Gifford with chronic low back pain without sciatica, PTSD, and a mild episode of recurrent major depressive disorder, among other diagnoses. (*Id.* at 5.)

In addition to his physical injuries, Gifford received treatment for depression and PTSD. Plaintiff underwent a behavioral evaluation on June 17, 2016 and was described as "high risk" for addiction and medication misuse because of substance abuse issues and poor coping strategies. (*Id.* at 3.) Gifford was frustrated with the prescribed opiate regiment because he continued to have pain and reported stress due to pain. Gifford was also assessed with adjustment disorder with anxiety and depressed mood. On November 16, 2017, Gifford began seeing Karen Kirk, LISW,

3

for depression. In addition to depression, Gifford also reported agitation and chronic pain limiting his daily activities. (*Id.* at 4.)

  **B.**  **Opinion Evidence**

On May 16, 2017, Dr. Ghoubrial evaluated Gifford for physical impairments on behalf of the state agency. Dr. Ghoubrial noted Gifford's history of back surgery, joint repair, rotator cuff surgery, and muscle reconstruction in his right shoulder. (*Id.* at 6.) Gifford reported difficulty functioning due to low back pain and that he had to change positions frequently due to pain. (*Id.*) Upon examination, Dr. Ghoubrial noted Gifford had severe decreased range of motion in the lumbar spine and limited range of motion and severe limited range of motion on rotation of the thoracolumbar spine. But Gifford had no muscle atrophy and 5/5 muscle strength and tone in his upper and lower extremities, and had normal manipulation, pinch and fine motor coordination. Dr. Ghoubrial opined that Gifford would have no difficulty sitting, standing, hearing, speaking, traveling, or handling objects, but would have difficulty lifting and carrying objects. (*Id.*)

On May 30, 2017, state agency reviewing consultant Gary Hinzman, M.D. reviewed Gifford's medical records and opined that Gifford was limited to work at less than the full range at the light exertional level. Dr. Hinzman further opined that Gifford's lower extremities were limited in the areas of pushing and pulling. Dr. Siddiqui also reviewed Gifford's medical records and affirmed Dr. Hinzman's opinion. (*Id.*)

  **C.**  **Plaintiff's SSI application**

Plaintiff's application was denied initially and upon reconsideration. Gifford requested a hearing, which was conducted by an administrative law judge ("ALJ"). (*Id.* at 1–2.)

Gifford testified at the ALJ hearing. At that time, he was forty-eight years old. Gifford previously worked for an excavating company as a laborer, pipe layer, and operator, where he was

required to stand all day, operate heavy equipment, and lift up to 150 pounds. Gifford testified that he could no longer work because his abilities to sit and stand were limited, and he was in constant pain. Gifford testified that his pain was primarily in his lower back where the rods had been inserted, and he alternated between sitting and standing every ten minutes. (*Id.* at 7.)

Vocational expert James Primm ("VE" or "Primm") also testified at the ALJ hearing. Primm testified that jobs were available to Gifford in the economy, with the caveat (among others) that an individual who was off task more than ten percent of the time would not be able to work, nor would an individual who required two or three additional 15-minute breaks during the day, or needed to alternate between sitting and standing positions every 15–20 minutes. (*See id.* at 8–9.)

The ALJ denied plaintiff's claim on February 15, 2019. In the ruling, the ALJ determined that Gifford had the residual functional capacity ("RFC")[2] to perform sedentary work and that he could stand and/or walk with normal breaks for a total of six hours in an eight-hour workday, and sit with normal breaks for a total of six hours in an eight-hour workday. Considering these limitations and others contained in the RFC, the ALJ concluded that Gifford was not disabled and there were jobs in the national economy Gifford could perform. (*Id.* at 9.)

Gifford appealed the ALJ's denial of his claim to the Appeals Council. While his appeal was pending, Gifford submitted to the Appeals Council a physical residual functional capacity assessment performed April 29, 2019 by Tim Verdouw OTR/L[3] ("Verdouw"), Cleveland Clinic Rehabilitation and Sports Therapy ("CC Assessment"), concerning the injuries Gifford sustained

---

[2] "Residual functional capacity" is defined in the regulations as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs [.]" 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).

[3] According to acronymfinder.com, OTR/L stands for "occupational therapist, registered, licensed."

on April 1, 2016. As a result of the assessment, Verdouw opined that Gifford was able to perform within the sedentary physical demand category but unable to work full-time because he needed to alternate between sitting and standing and can only work up to 3 hours and 33 minutes per day. (*See* Doc. No. 13 at 17; Doc. No. 18 at 5.) On January 16, 2020, the Appeals Council denied further review and the ALJ's decision became the decision of the Commissioner. (Doc. No. 18 at 2.) In its ruling, the Appeals Council declined to address the CC Assessment on the grounds that it did not relate to the disability period at issue and, therefore, was not relevant to the ALJ's determination of Gifford's disability on or before February 15, 2019. Instead, it advised Gifford to file a new application for disability. Because of this decision by the Appeals Council, the CC Assessment, which is part of the administrative record before the Court, was never considered by the ALJ. (Doc. No. 13 at 6.)

### D. The Instant Action

In this action, Gifford claims that the ALJ erred when she: (1) failed to properly evaluate the evidence in this matter, in particular, his subjective complaints of pain and need to alternate between sitting and standing positions; and (2) did not meet her burden at Step Five of the Sequential Evaluation. Among the relief Gifford requests is a remand for further consideration of the evidence. (Doc. No. 14 (Gifford's Merits Brief) at 15.) The Commissioner contends that the ALJ did consider Gifford's subjective complaints of pain and properly applied the five-step sequential process to determine whether Gifford was disabled. (*See* Doc. No. 16 (Commissioner's Merits Brief).)

The magistrate judge found Gifford's assignments of error to be without merit and recommended that the Commissioner's decision denying plaintiff's application be affirmed. The R&R mentions, but does not discuss, the CC Assessment. (Doc. No. 18 at 5.) In his objection,

6

Gifford notes that the R&R mentioned the CC Assessment, and argues that the assessment provides additional support for his argument that the ALJ did not properly consider his subjective complaints of the need to frequently change positions due to pain, and the impact of that limitation on the availability of jobs in the national economy. (*See* Doc. No. 19 at 2.) Gifford asks this Court to reject the R&R and remand this case for further proceedings. In essence, plaintiff is seeking remand to allow the ALJ to consider the CC Assessment, which was not previously before the ALJ, as corroborating evidence of his claim that he must frequently change positions due to pain.

**II.     DISCUSSION**

   **A.     Standard of Review**

This Court's review of the R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made. *See Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district judge in light of the *specific objections* filed by any party.") (emphasis added) (citations omitted); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[]"); Local Rule 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections[]"). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

Judicial review of an administrative decision under the Social Security Act is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If there is substantial evidence to support the defendant's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *See Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

**B.     Analysis**

When reviewing the Commissioner's decision, the Court may not consider evidence that was not before the ALJ. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016). But under sentence six of 42 U.S.C. § 405(g), the Court may remand the case and order that new evidence be taken into account upon a showing that the new evidence "'is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id.* (quoting 42 U.S.C. § 405(g)); *see also Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *9 (6th Cir. 2017) ("Sentence six of 42 U.S.C. § 405(g) enables a district court to remand a disability case for further administrative proceedings in light of evidence presented after

the ALJ's decision.") (citing *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013)). In a sentence six remand, the Court does not rule on the correctness of the administrative decision, "'[r]ather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.'" *Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 653 (6th Cir. 2009) (quoting *Melkonyan v. Sullivan,* 501 U.S. 89, 98, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991)). The Court may remand a case to the Commissioner pursuant to sentence six upon motion or *sua sponte*. *St. v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 640 (E.D. Mich. 2005) ("[U]nder the plain language of § 405(g), the Court can properly grant a sentence six remand *sua sponte,* based on its finding that the post-decision material is both new and material.") (citation omitted).

In the instant action, Gifford argues that the CC Assessment, performed after the ALJ's decision was rendered, corroborates his subjective complaints of the need to frequently change positions due to chronic pain. (Doc. No. 19 at 2.) The CC Assessment was performed April 29, 2019—approximately two months after the ALJ's decision was issued.[4] (Doc. No. 13 at 17.) The CC Assessment is new evidence in that it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990)). Nor is the CC Assessment cumulative of medical evidence already in the record concerning the issue of Gifford's need to alternate positions due to pain. *See Harvey*, 2017 WL 4216585, at *9 (new evidence cannot be cumulative of evidence already in the record). Finally, Gifford had good cause for not submitting the CC Assessment for the ALJ's decision was rendered because it had

---

[4] Gifford was referred for the assessment by Amy Westfall CNP, but the referral date does not appear in the record. (*See* Doc. No. 13 at 18.)

9

not yet been performed. *See id.* (claimant had good cause for failing to submit the evidence earlier because the surgeries took place after the ALJ issued his decision).

"Evidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (citing, among authority, *Mingus v. Comm'r of Soc. Sec.,* No. 98–6270, 1999 WL 644341, at *5 (6th Cir. Aug.19, 1999)). The Appeals Council declined to consider the CC Assessment, stating that the ALJ decided Gifford's case February 15, 2019 and the "additional evidence does not relate to the period at issue" and "does not affect the decision about whether you were disabled beginning on or before February 15, 2019[,]" and advised Gifford to file a new disability application. (Doc. No. 13 at 6.)

The Court disagrees. The date of injury indicated on the CC Assessment is April 1, 2016, and the purpose of the residual functional capacity assessment was to determine Gifford's ability to perform work as a result of that injury, refers to the spinal lumbar fusion performed on April 9, 2016 following the accident on April 1st, and was conducted specifically to determine Gifford's "physical residual functional capacity as it relates to making a decision associated with a Social Security Disability claim." (*See id.* at 19–20.) The Court concludes that the CC Assessment is material in that it assesses Gifford's medical condition and ability to work as a result of injuries sustained April 1, 2016, there is no indication of a change or deterioration of his condition and, therefore, is probative of Gifford's condition during the time period at issue before the ALJ. *See Pickard*, 224 F. Supp. 2d at 1171 ("The ALJ found the plaintiff's complaints of pain and loss of use of her right arm were not supported by objective evidence and, therefore, concluded they were not credible. The reports which make up the new evidence were prepared five and seven months after the ALJ rendered his decision. There is no indication that the plaintiff's condition as evaluated

in the reports was a result of deterioration or change in her condition since the date of the ALJ's determination. Rather, given the relatively short time span involved, it is the opinion of the undersigned that the evidence is arguably probative of Pickard's condition during the relevant time period."); *see also Harvey*, 2017 WL 4216585, at *9 ("Contrary to the Commissioners argument, this post-hearing evidence [of two recent knee surgeries] did not merely reveal a change in Harvey's condition that arose after the date of the ALJ's decision; instead, this evidence was related to Harvey's ongoing knee problems at the time the ALJ rendered his decision." (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)).

Finally, the CC Assessment may change the outcome of the ALJ's February 15, 2019 decision. *Allen,* 561 F.3d at 653 (a sentence six remand is appropriate where new evidence becomes available that might have changed the outcome of the prior proceeding). Based upon the record available at the time, the ALJ concluded that that Gifford could stand or walk (with normal breaks) for a total of four hours in an eight-hour workday, and sit with normal (with normal breaks) for a total of six hours in a workday, and that plaintiff "would be off-task equal to or less than ten percent of the time in an eight-hour day due to a need to change positions, to relieve pain or because of pain interfering with attention/concentration and or pace." (Doc. No. 13 at 45.) The CC Assessment indicates that Gifford can only work 3 hours and 33 minutes per day due to a need to alternate positions between sitting and standing. (*Id.* at 19.) The CC Assessment was not before the ALJ at the time of the hearing when, in response to the ALJ's hypothetical number five, the VE testified that if an individual could not sit, stand, or walk for eight hours in an eight hour workday, there were no jobs in the national economy for that individual. (*Id*. at 100.) The VE elaborated that if an individual needed to change positions every fifteen to twenty minute, that individual could not stay on task even for sedentary work: "For that individual to be jumping up

and down around every 20 minutes is just not conducive with the sedentary work. And the positions that I previously provided . . . did not allow for any of those change of positions[.]" (*Id.* at 102.)

While it is somewhat of a close call, and the Court makes no determination as to what the outcome of the ALJ's consideration of the CC Assessment should be, the Court finds that the legal standard for a sentence six remand is sufficiently satisfied in this case to warrant remand. *See Pickard*, 224 F. Supp. 2d at 1171 ("[W]hile it is a close question, the court finds that plaintiff has carried her burden of showing that remand [under the sixth sentence of 42 U.S.C. § 405(g)] is appropriate for the purpose of allowing the ALJ to consider the new evidence presented by the plaintiff.").

Accordingly, pursuant to the sixth sentence of 42 U.S.C. § 405(g), this case is remanded to the ALJ for further administrative proceedings and reconsideration of the evidence in light of the CC Assessment. Because this case is remanded, the Court declines to rule on the R&R and Gifford's objections are dismissed without prejudice. The case is administratively closed, subject to reopening upon motion by the parties.

**IT IS SO ORDERED**.

Dated: August 24, 2021

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**